UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

CAMERON MOORE,

    Plaintiff,

v.

MAIL MEDIA INC.

    Defendant.
_____/

**<u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>**

The Plaintiff, CAMERON MOORE (hereinafter referred to as "MOORE"), by and through his undersigned counsel, hereby files this Complaint against the Defendant, MAIL MEDIA INC., (hereinafter referred to as the "Defendant"), and alleges as follows:

**I.    <u>PARTIES, JURISDICTION, AND VENUE</u>**

1. This is an action for damages and equitable relief for defamation per se and defamation by implication.

2. The Plaintiff, CAMERON MOORE, is an individual and resident of Palm Beach County, Florida, and is otherwise sui juris.

3. The Defendant, MAIL MEDIA INC., is incorporated in Delaware and has its principal place of business in New York, New York, operates the U.S. edition of the Daily Mail website, and conducts business in Florida and throughout the United States.

1

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and the parties are completely diverse, as MOORE is a citizen of Florida, and the Defendant is a citizen of New York.

5. The Court possesses personal jurisdiction over the Defendant pursuant to Florida Statute §48.193(2) on the grounds that the Defendant, at all times material hereto, engaged in substantial and not isolated business activities in Florida and this District. More specifically, the Defendant published an online news report about MOORE, which is the subject of this Complaint, (hereinafter referred to as the "Article"), at www.dailymail.co.uk, which is regularly read by individuals in Florida.

6. Moreover, this Court possesses personal jurisdiction over the Defendant pursuant to Florida Statute §48.193(1)(a)(6) on the grounds the Defendant caused injury to MOORE within this state arising out of an act or omission by the Defendant outside this state, while at or about the time of the injury, products, materials, or things processes, serviced, or manufactured by the Defendant were used or consumed within this state in the ordinary course of commerce, trade, or use. The Article published by the Defendant is available for public consumption in Florida, has been read by individuals in Florida, and has caused particular harm to MOORE's reputation and business efforts in Florida.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant routinely publishes and circulates articles/newspapers within this district, and a substantial part of the events or omissions giving rise to the claims and damages caused therefrom occurred in this judicial district, specifically in Palm Beach County, Florida.

2

8. All conditions precedent prior to the filing of this Complaint have been met or otherwise waived.

## II. FACTUAL BACKGROUND

9. MOORE is engaged in the business of fundraising. His continued career success depends on the trust and credibility he has built with donors, community leaders, and public officials.

10. Specifically, MOORE runs a nonprofit organization, American Heroes Association, which focuses on advocating for the rights and raising funds to aid veterans and their families as well as support political candidates.

11. On September 5, 2025, the Defendant published the Article concerning MOORE online at www.dailymail.co.uk.

12. The Article was distributed to a wide readership, including thousands of individuals within Florida and this District. The Article was, as the reporter for the Defendant represented and stated to MOORE, reporting on an ongoing lawsuit in Palm Beach County, Circuit Court between MOORE, Maria Selloni, and allegations made by a third party, Jasmine Redd. (MOORE, CAMERON V SELLONI, MARIA, Case Number: 50-2024-CA-000151-XXXA-MB, hereinafter "Lawsuit").

13. Instead of just reporting on and writing about the Lawsuit and allegations made by a third party, Jasmine Redd, the Defendant intentionally and maliciously used the Article as an opportunity to defame MOORE and characterize him as a deceptive opportunist or imposter who persuades public figures to pose with him to fabricate associations with them.

14. This action does not seek to chill or punish Defendant's reporting on matters of public record or legitimate commentary on public issues. Rather, it challenges specific inaccurate, false, and misleading statements and implications about MOORE's honesty and professional conduct that were gratuitously included in the Article and are not related to the Lawsuit and the allegations made by a third party, Jasmine Redd.

### a. The Defendants' Inaccurate, False and Misleading Statements

15. The Defendant knew of the falsity of or recklessly disregarded the truth of the following statements and went on to publish them in the Article at the expense of MOORE.

16. These statements were made in the Article and published on the Defendants website www.dailymail.co.uk, on September 5, 2025.

17. There were two specific statements made in the article, which are delineated below: The first defamatory statement concerning MOORE, published by the Defendant, was that:

"FBI Director Kash Patel was another outspoken Trump supporter that was persuaded by Moore to pose with."

18. The second defamatory statement made in the Article was:

"And just last week, Moore posted what seems to be a fresh video of himself standing with Trump confidante Roger Stone, who was celebrating his birthday and can be seen thanking Trump for treating them to dinner that night. But those more recent posting were deceptive, Stone tells Daily Mail, saying the video showing him with Moore was actually shot at his 71st birthday two years ago."

### b. Refusal to Retract and Actual Malice

19. On September 8, 2025, MOORE sent a letter to the Defendant notifying it of the falsity of the above statements (hereinafter referred to as the "September 8 Letter") and requesting that the Defendant correct or retract them. See a true and correct copy of the September 8, 2025, Letter attached hereto as Exhibit "A."

20. Despite MOORE's request, in-house counsel for the Defendant responded in a letter dated September 12, 2025, (hereinafter referred to as the "September 12 Letter"), the Defendant would not retract the statement regarding Kash Patel as "the word persuade does not and was not meant to imply deception as you baldly suggest."

21. Despite the Defendant's contention that the word persuade was not meant to imply deception (although it was), of importance, the statement was patently false.

22. It is an undisputable fact that MOORE did not persuade, pressure, or otherwise improperly induce Mr. Patel to take the subject photograph. The statement made by the Defendant that MOORE did as such is not mere opinion, but rather a defamatory falsity.

23. The subject photograph was taken amicably, without reluctance or resistance and the false statement or implication that MOORE had to "persuade" Mr. Patel to take a photograph with him is baseless and a lie.

24. The statement was included in the Article for no other reason than to maliciously damage MOORE and his reputation.

25. Moreover, the statement also directly suggests that MOORE "persuaded" other Trump supporters to pose with him.

26. Specifically, the article states: "<u>FBI Director Kash Patel was **another** outspoken Trump supporter that was persuaded by Moore to pose with." (emphasis added in bold type).</u>

27. Here, the Defendant not only states falsely that MOORE persuaded Mr. Patel to pose with him, but it also goes even further, by using the word "another," to falsely imply that there are others who MOORE has persuaded to take pictures with him.

28. As previously stated, this is not mere opinion, it is a false and maliciously crafted statement made to convey the false and damaging impression that MOORE is an opportunist who fabricates relationships with public officials, thereby falsely suggesting undisclosed facts of manipulation and deceit to undermine his professional reputation.

29. As a result of the defamatory statements made in the Article MOORE notified the Defendant in his September 8, 2025, Letter that he did not "persuade" Mr. Patel to take the picture, and that MOORE had previously raised substantial monies for Mr. Patel's "Fight with Kash" foundation during one of Mr. Patel's fundraising events.  Moreover, MOORE explained to the Defendant that MOORE was previously a video producer/ editor for Mr. Patel and that MOORE spoke with Mr. Patel regarding fundraising efforts immediately prior to the referenced picture and statement in the Article.

30. The Defendants have refused to retract this statement despite MOORE notifying them of its falsity and the damaging effect it has on his relationships with donors and fundraising efforts.

6

31. The falsity of the statement on its face, coupled with the implication that MOORE fabricates relationships with public figures and political candidates to mislead the public is defamatory and damaging to MOORE's career success in fundraising. MOORE relies on these very same and legitimate relationships as the foundation of his fundraising efforts.

32. In the same September 12 Letter, in-house counsel for the Defendant stated the Defendant would not retract the statements regarding the video of MOORE with Roger Stone because it was the Defendant's "opinion of what it looked like", and claimed MOORE's counsel stated to the Defendant's reporter that MOORE posted the video to stay relevant, and Mr. Stone is the one who said the recent video was deceptive.

33. Although the Article does state that Mr. Stone told the Defendant that the video was taken two years earlier at his 71st birthday party, the article goes further, by stating that the post was "deceptive."

34. While it is true that the video at issue had been recorded two years earlier, that fact alone does not imply deception. MOORE's counsel explained to the Defendant's reporter that MOORE occasionally posted older photographs and videos in order to remain visible and relevant, particularly in light of reputational harm already inflicted upon him by unrelated third parties. At no time did MOORE, or his counsel, state that MOORE acted deceptively or attempted to mislead the public.

35. Nevertheless, the Defendant went beyond merely reporting that the video was taken two years earlier. In its own voice, and without attribution, the Defendant described the post as "deceptive," presenting this conclusion as its own factual characterization rather than as a

7

quotation from Mr. Stone or anyone else. By doing so, the Defendant conveyed to its readers that MOORE acted with dishonest intent, thereby suggesting undisclosed facts supporting a claim of deliberate deceit.

36. This was not protected opinion or rhetorical hyperbole. The term "deceptive" was presented as an asserted fact, that MOORE intentionally misled the public, when in reality the only true fact disclosed was that the video was older. The Defendant's use of the word "deceptive" thus constituted actionable defamation by implication: it took a true circumstance (that the video was from two years prior) and layered onto it a false and malicious implication that MOORE engaged in fraud or manipulation to bolster his reputation.

37. Politicians, influencers, celebrities, and public figures routinely post photos from previous events to remind the public of their alliances or stature, reaffirm political ties, and signal continued relevance.

38. MOORE did not falsely present the photo as new, mislabel it as recent, or imply a current endorsement that does not exist.

39. MOORE notified the Defendant in the September 8 Letter that he recently posted a separate image online with Mr. Stone, taken just over a month ago, of MOORE and Mr. Stone at an event to raise awareness for World War II veterans in Las Vegas, Nevada. This evidences the falsity of the statement and insinuation that MOORE sought to deceive the public by sharing an older video with Mr. Stone.

40. Posting an older photograph or video is not inherently deceptive, particularly where MOORE has also shared more recent photographs with the same individual, confirming the ongoing nature of their relationship.

41. By pairing MOORE's posting of the video with the description "seemingly fresh" and the unquoted label "deceptive," the Defendant has falsely stated and implied that MOORE was intentionally deceiving the public and most certainly implied that MOORE fabricates associations with political figures.

42. The Defendant's portrayal that MOORE is a manipulative opportunist is false, misleading, and highly damaging to MOORE's reputation, particularly given his role as the primary fundraiser for American Heroes Association, of which depends on the success of his efforts and continued credibility and authenticity of his relationships.

43. All of the Defendant's above-mentioned statements were baseless and made to imply to the Defendant's readers that MOORE is dishonest and intentionally misleads the public through his social media postings, including Instagram.

44. The Defendant acted with actual malice or, at a minimum, a reckless disregard for the truth. It knew and/or recklessly disregarded the fact that the statements and implications it made in the Articles were false,

45. The Defendant nevertheless published these statements for the purpose of sensationalizing the story, exploiting MOORE's reputation to attract attention and increase readership, all at MOORE's expense and for Defendant's own profit.

9

46. MOORE notified the Defendant of the false nature of, and implication created by these statements in his request that they correct or retract them in the September 8 Letter and instead of doing so, they have decided to double-down and allow them to remain published as they are.

47. As a direct result of Defendant's publication, MOORE has suffered reputational harm, humiliation, loss of professional opportunities, and emotional distress.

48. Prior to the filing of this Complaint, Plaintiff, MOORE, satisfied all conditions precedent required for the commencement of this action, or, to the extent any such conditions precedent remain, they have been waived or excused.

49. As a direct result of Defendant's actions, Plaintiff, MOORE, was compelled to retain the undersigned counsel and is responsible for the payment of reasonable attorneys' fees and costs incurred in this action.

## COUNT I – DEFAMATION PER SE

50. Plaintiff, MOORE, realleges and incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

51. The Defendant published false, malicious, and defamatory statements about MOORE intentionally or with a reckless disregard for the truth.

52. The defamatory statements were not privileged in any way. They were not a fair and accurate report of judicial proceedings, nor were they protected opinion, fair comment, or otherwise qualified or conditionally privileged.

THE SASSON LAW FIRM
2500 NORTH MILITARY TRAIL, SUITE 240, BOCA RATON, FLORIDA 33431
TELEPHONE: (561) 246-5085

53. The Defendant's Article stated that "FBI Director Kash Patel was **another** outspoken Trump supporter that was **persuaded** by Moore to pose with." (emphasis added in bold"). This statement is false.

54. It is an undisputable fact that MOORE did not persuade, pressure, or otherwise improperly induce Mr. Patel to take the subject photograph. The statement made by the Defendant that MOORE had to persuade Mr. Patel to take a picture with him and is not mere opinion, but rather a malicious and defamatory falsity.

55. The photograph was taken willingly and amicably, reflecting a legitimate and ongoing relationship between MOORE and Mr. Patel.

56. MOORE's relationship with Mr. Patel was grounded in professional and fundraising ties. MOORE had previously raised substantial monies for Mr. Patel's "Fight with Kash" foundation, had worked as a video producer/editor for Mr. Patel, and had communicated with Mr. Patel regarding fundraising efforts immediately prior to the photograph at issue.

57. The Defendant's intentional use of the word "persuaded" was both false and defamatory because it asserted as fact that Plaintiff had to persuade Mr. Patel to take a picture with him.

58. This false statement of fact directly impugns MOORE's honesty and integrity in his professional capacity as a fundraiser, where his reputation depends upon cultivating genuine and voluntary relationships with public figures.

59. This is not merely imprecise wording, but a false assertion that strikes at the core of MOORE's professional character by suggesting that he deceives the public through

11

misrepresentation of his associations with prominent political figures. Such an attack on MOORE's honesty and fitness in his chosen profession constitutes defamation per se, for which damages are presumed as a matter of law.

60. Moreover, the statement also directly falsely states that MOORE "persuaded" other Trump supporters to pose with him.

61. Specifically, the article states: "<u>FBI Director Kash Patel was **another** outspoken Trump supporter that was persuaded by Moore to pose with.</u>" (emphasis added in bold type).

62. Here, the Defendant not only states falsely that MOORE persuaded Mr. Patel to pose with him, but it also goes even further, by using the word "another" to falsely claim that there are others to whom MOORE had to persuade to take pictures with him. This is false and defamatory.

63. The malicious and deliberate statement MOORE had to persuade not only Mr. Patel, but also other individuals, directly attacks MOORE's honesty and integrity in his profession as a fundraiser, where his success depends upon authentic and voluntary relationships with public figures.

64. The Article described MOORE's Roger Stone post as "seemingly fresh" and then labeled it "deceptive," without quotation marks, thereby presenting "deceptive" as the Defendant's own factual assertion rather than an opinion attributed to Mr. Stone. This false statement communicated to readers that MOORE intentionally misled the public, directly attacking his honesty and integrity in his profession as a fundraiser.

THE SASSON LAW FIRM
2500 NORTH MILITARY TRAIL, SUITE 240, BOCA RATON, FLORIDA 33431
TELEPHONE: (561) 246-5085

65. These statements are false and directly impugn MOORE's honesty, integrity, and ethics in his chosen profession of fundraising, thereby constituting defamation per se for which damages are presumed as a matter of law.

66. It is common and accepted for politicians and public figures to repost older photographs or videos to highlight ongoing relationships or maintain relevance. MOORE never misrepresented the age of the Roger Stone video, nor did he suggest that it was taken at a later date. By labeling the post "deceptive," the Defendant did not express an opinion, but instead made a false factual assertion carrying a defamatory sting.

67. A fundraiser's reputation depends on credibility and the authenticity of his relationships with donors, community leaders, and political figures. By stating as a fact that MOORE has been "deceptive" and asserting that he fabricated maintaining relationships with public officials, the Defendant attacked the very core of MOORE's professional character.

68. Courts have long recognized that accusations of deception, dishonesty, or fraudulent conduct are actionable as defamation when made falsely and with actual malice.

69. Under Florida law, statements that injure a person in his business, trade, or profession by imputing dishonesty or lack of integrity constitute defamation per se.

70. The Defendant's conduct is therefore actionable without proof of special damages, as the law presumes that such statements have caused injury to MOORE's reputation and business.

71. The Defendant acted with actual malice, or at minimum reckless disregard for the truth, in publishing these defamatory statements.

13

72. Instead, the Defendant deliberately published false statements directly attacking MOORE's honesty and integrity in his profession, and, even after being notified of their falsity, refused to retract or correct them.

73. As a direct and proximate result of the Defendant's publication, MOORE has suffered presumed damages and, in addition, actual damages including reputational harm, humiliation, emotional distress, and loss of professional opportunities.

WHEREFORE, the Plaintiff, CAMERON MOORE, demands judgment against Defendant, MAIL MEDIA INC., for defamation per se, and seeks presumed damages for injury to reputation, compensatory damages, nominal damages, punitive damages, emotional distress, costs of this action, interest and such other and further relief as this Court deems just and proper. The Plaintiff, CAMERON MOORE, further requests permanent injunctive relief requiring the Defendants to remove or retract the defamatory publication at issue, and any other relief this Court deems just and proper.

## COUNT II – DEFAMATION BY IMPLICATION

74. The Plaintiff, MOORE, realleges and incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

75. Defamation by implication arises where a defendant places statements together in a manner that creates a false impression or omits material facts so that the publication as a whole conveys a defamatory meaning that is not literally stated.

76. The Defendant's Article did precisely this. Although framed as reporting on an unrelated lawsuit, the Article inserted false and misleading descriptions of MOORE's interactions

with public figures, including Kash Patel, Roger Stone, and other "Trump supporters," in a manner calculated to portray MOORE as dishonest, opportunistic, and as one who fabricates relationships to mislead the public.

77. By juxtaposing true facts, such as MOORE's posting of older photographs, with false and defamatory characterizations that he acted "deceptively" or had to "persuade" public figures to associate with him, Defendant conveyed to readers the false implication that MOORE routinely fabricates relationships to mislead the public. Under Florida law, defamation arises not only from express falsehoods, but also from the arrangement of facts in such a way that the publication as a whole conveys a defamatory meaning not literally stated.

78. Specifically, the Article stated: "FBI Director Kash Patel was another outspoken Trump supporter that was persuaded by Moore to pose with." By asserting that Mr. Patel was "persuaded" to pose with MOORE, the Defendant falsely conveyed that Mr. Patel was reluctant or unwilling, and that MOORE pressured or manipulated him into taking the photograph, thereby impugning MOORE's honesty and integrity.

79. Moreover, the Article went further by suggesting that MOORE also "persuaded" other Trump supporters to pose with him, thereby falsely portraying him as manufacturing political associations under false pretenses, rather than cultivating authentic relationships.

80. Specifically, the article states: "<u>FBI Director Kash Patel was **another** outspoken Trump supporter that was persuaded by Moore to pose with.</u>" (emphasis added in bold type).

15

81. Here, the Defendant not only states falsely that MOORE persuaded Mr. Patel to pose with him, but it also goes even further, by using the word "another" to falsely claim that there are others who MOORE has persuaded to take pictures with him. This is false and defamatory.

82. While it is true that MOORE posed for a picture with Mr. Patel, Defendants' decision to describe that interaction as one in which Patel had to be "persuaded," and to frame him as "another" reluctant Trump supporter, falsely conveyed to readers that MOORE not only fabricated this association but routinely engages in the same conduct with other public figures and/or Trump supporters, thereby attacking his honesty and integrity in his profession.

83. By characterizing Mr. Patel as "another" individual whom MOORE had to persuade to pose with him, the Defendant intentionally and maliciously conveyed to readers that MOORE engages in a recurring pattern of fabricating associations with public figures. This false suggestion of habitual dishonesty goes beyond reporting a single event and instead portrays MOORE's entire professional conduct as deceptive, constituting defamation by implication.

84. This implication directly injures MOORE in his professional role as a fundraiser for veterans' causes and political candidates, where credibility and the authenticity of his relationships are essential to his work and reputation.

85. Likewise, the Article described MOORE's posting of a video with Roger Stone as "seemingly fresh" and then stated that the post was "deceptive," claiming the video was in fact two years old.

The Sasson Law Firm
2500 North Military trail, Suite 240, Boca Raton, Florida 33431
Telephone: (561) 246-5085

86. Although the Article reported that Mr. Stone told Defendant the video was taken two years earlier at his 71st birthday party, the Article went further by labeling MOORE's post as "deceptive."

87. While it is true that the video had been recorded two years earlier, that fact alone does not imply deception. MOORE's counsel explained to Defendant's reporter that MOORE occasionally posted older photographs and videos to remain visible and relevant, particularly in light of reputational harm already inflicted by unrelated third parties. At no time did MOORE, or his counsel, state that MOORE acted deceptively or attempted to mislead the public.

88. Nevertheless, the Defendant went beyond merely reporting that the video was two years old. In its own voice, and without attribution, the Defendant described the post as "deceptive," presenting this label as its own factual assertion rather than as a quotation from Mr. Stone or anyone else. By doing so, the Defendant falsely conveyed to readers that MOORE acted with dishonest intent, thereby imputing deliberate deceit and impugning MOORE's professional reputation.

89. This was not protected opinion or rhetorical hyperbole. The term "deceptive" was presented as an asserted fact that MOORE intentionally misled the public, when in reality the only fact disclosed was that the video was older. The Defendant's use of the word "deceptive" took a true circumstance (that the video was from two years prior) and layered onto it a false and malicious implication that MOORE engaged in fraud or manipulation to bolster his reputation.

90. Public figures, politicians, and fundraisers often post older photos or videos to highlight ongoing relationships. MOORE has in fact recently posted another photo with Mr. Stone

17

which was taken mere months ago at a charity even, confirming the authenticity and continuity of their association.

91. By pairing the "seemingly fresh" description with the unquoted label "deceptive," the Defendant created the implication that MOORE deliberately misled the public and was fabricating connections with political figures, when in fact he did no such thing.

92. These statements, in the context of the Article as a whole, were not included to inform the public about the underlying lawsuit or allegations made by a third party, Jasmine Redd, but instead to portray MOORE as a manipulative opportunist or impostor whose professional relationships are illegitimate.

93. The defamatory implication conveyed to readers was that MOORE is dishonest in his professional dealings, misrepresents his associations with political figures, and deceives the public. This implication goes directly to the heart of MOORE's fundraising efforts, where credibility and genuine relationships are paramount.

94. The Defendant acted with actual malice, or at minimum with reckless disregard for the truth, in publishing these defamatory implications.

95. The Defendant deliberately selected language calculated to create a false and damaging impression of MOORE's honesty and integrity, and, even after being notified of the falsity of its statements, refused to retract or correct them.

96. As a direct and proximate result of the Defendant's publication of false and defamatory implications, MOORE has suffered reputational harm, humiliation, emotional distress,

18

loss of professional opportunities, and a diminished ability to successfully conduct his fundraising business.

WHEREFORE, the Plaintiff, CAMERON MOORE, demands judgment against Defendant, MAIL MEDIA INC., for defamation by implication, and seeks presumed damages for injury to reputation, compensatory damages, nominal damages, punitive damages, emotional distress, costs of this action, interest, and such other and further relief as this Court deems just and proper. The Plaintiff, CAMERON MOORE, further requests permanent injunctive relief requiring the Defendants to remove or retract the defamatory publication at issue, and any other relief this Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: September 17, 2025.

**Respectfully submitted,**


THE SASSON LAW FIRM
2500 North Military Trail, Suite 240
Boca Raton, Florida 33431
Telephone: (561) 246-5085
Email: jamie@sassonlawfirm.com

By: /s/ Jamie Alan Sasson
JAMIE ALAN SASSON, ESQ.
Florida Bar No. 10802
Counsel for Plaintiff