UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:25-cv-81146-EA

CAMERON MOORE,

        Plaintiff,

v.

ASSOCIATED NEWSPAPERS LIMITED,

        Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Associated Newspapers Ltd. ("Defendant" or "ANL") moves to dismiss with prejudice Plaintiff Cameron Moore's Amended Complaint (ECF No. 18) ("Complaint") for failure to state a claim.

### PRELIMINARY STATEMENT

Plaintiff Cameron Moore ("Plaintiff" or "Moore") is a wealthy Republican fundraiser and former member of President Donald Trump's Mar-a-Lago Club.  It is undisputed that Moore's membership to the Club was revoked in 2024, after his ex-girlfriend accused him of sexually assaulting her at the Club and a recording of them arguing after the incident circulated to members of the Mar-a-Lago community, including the President's son Eric Trump.[1]  Moore also was cited for abusing his Club privileges by approaching the President's table at dinner without permission, and for allowing one of his guests to take unauthorized photographs at the Club.[2]

On September 5, 2025, ANL published a news article on the MailOnline website reporting on court records that described these events (the "Article").  *See* Ex. A.  Moore

_____

[1] Moore then sued the Club member for defamation and other claims related to her allegedly sharing the recording; he also sued his ex-girlfriend for defamation, invasion of privacy and unlawful recording.  Both lawsuits are ongoing.  *See Moore v. Redd*, 9:24-cv-81107-AMC (S.D. Fla.); *Moore v. Selloni*, 50-2024-CA-000151-XXXA-MB (Fla. 15th Cir. Ct.).

[2] This violation of Club rules became known when the guest posted the photographs on social media, as part of a campaign to become President Trump's press secretary.  *See* Ex. A.

responded by filing another defamation lawsuit – this time, against ANL.  Notably, Moore is not suing about *any* of the statements in the Article describing the events that led to his banishment from Mar-a-Lago.  Instead, Moore (literally) makes a federal case out of two innocuous statements in the Article that reference his ongoing – and undisputed – efforts to depict himself as a MAGA insider, by posting pictures of himself on social media with members of President Trump's inner circle.  Compl. ¶¶ 18-19.  The first statement is the caption to a photograph of Moore posing with FBI Director Kash Patel, which says that Patel "was persuaded by Moore to pose with" him.  *Id.* ¶ 18.  The second statement references Moore's recent post of a video of himself with Roger Stone, which the Article refers to as "deceptive" because it suggests that they just had dinner with President Trump – when, in reality, the video was two years old (and was taken before Moore's ban from Mar-a-Lago).  *Id.* ¶ 19.  Moore's attempt to assert claims for defamation *per se* and defamation by implication are entirely without merit.

*First*, the statement that Moore "persuaded" FBI Director Patel to pose with him is not capable of a defamatory meaning, especially given Moore's own explanation that he routinely poses for photographs with prominent Trump supporters to promote his fundraising business.  Moreover, this statement is demonstrably true – the photograph itself, and Moore's own Complaint, demonstrate that Patel "was persuaded" to pose for a photograph with Moore.

*Second*, the reference to Moore's social media post as "deceptive" is a non-actionable opinion based on undisputed, disclosed facts.  The Article accurately reported that Moore had recently posted "what seems to be a fresh video of himself standing with Trump confidante Roger Stone, who was celebrating his birthday and can be seen thanking Trump for treating them to dinner that night."  Ex. A at 8.  In fact, as Stone confirmed (and Moore concedes), the video at issue was *two years old*, depicting events that occurred before Moore's membership at Mar-a-Lago was revoked.  Moore *admits* in his Complaint that he "occasionally posted older photographs and videos in order to remain visible and relevant."  Compl. ¶ 35.  Based on these undisputed facts, the use of the word "deceptive" to characterize Moore's post clearly is a subjective conclusion that requires First Amendment protection.  In any event, Moore's admitted posting of a two-year old video to show that he remains "relevant" to the President and his inner circle – without disclosing that Moore has been banned from Mar-a-Lago – can be fairly and accurately described as "deceptive."

*Third*, Moore's defamation claims independently fail under the incremental harm doctrine, which precludes a defamation claim if the *unchallenged* portions of a publication are more likely to have caused any alleged reputational harm than the statements at issue.  Here, Moore has not challenged (and cannot challenge) the Article's reporting about the events that led to his Mar-a-Lago membership being revoked – including the scandal about his alleged sexual assault of his ex-girlfriend, and his abuse of Club privileges.  Given these damning accusations, Moore cannot credibly claim that the Article's statements about two of his Instagram posts caused any meaningful reputational harm.

*Fourth*, although Moore tacitly concedes that he is a public figure, he fails to allege facts that would meet his burden of proving that the statements at issue were published with actual malice.  Public figures asserting defamation claims must allege specific facts that would, if proven, constitute clear and convincing evidence that the statements were published with knowledge of falsity or "reckless disregard" for their truth.  Here, however, Moore alleges only that ANL failed to retract the Article after he complained about it; but that is not sufficient to demonstrate actual malice as a matter of law.  This defect also defeats his defamation claims.

*Fifth*, the Complaint independently fails to plead a claim for defamation by implication.  Under Florida law, this claim arises from statements that are true but create a false and defamatory implication.  They do not arise from assertions, like Moore's here, that the statements at issue are "false."  For this additional reason, his defamation by implication claim fails and must be dismissed.

Meritless cases like this one, which arise from the exercise of First Amendment rights, should be dismissed at the earliest possible opportunity.  Because Moore's claims fail as a matter of law, his Complaint should be dismissed in its entirety, without leave to amend.

## FACTUAL BACKGROUND

### A.      The Parties

Plaintiff Cameron Moore alleges that he is "in the business of fundraising" and runs a nonprofit organization called "American Heroes Association," which raises funds to "support[] political candidates" and "aid veterans" as well as advocating for veterans' rights.  Compl. ¶¶ 9-10.  At the time the Article was published, ANL owned and published the MailOnline news

website (accessible in the United States at www.dailymail.co.uk).  *Id.* ¶ 3.

B.      **The Article**

On September 5, 2025, ANL published an Article on the MailOnline website titled *"Sex attack' scandal rocks Mar-a-Lago … as member shares damning secret tape."* Ex. A.[3]  The Article accurately reported that Moore, a "wealthy Republican fundraiser," had his Mar-a-Lago membership revoked in or around November 2024 after Moore was accused of sexually assaulting his then-girlfriend at the Club, and a recording capturing their argument about the allegation was circulated, and after Moore allegedly violated Club rules by "approaching the president's table at dinner without permission," and by "allowing one of his guests … to take photos in an area where photography is forbidden without permission."  *Id.* at 6.

The Article detailed legal filings in Moore's subsequent lawsuit against Mar-a-Lago member Maria Selloni, including summarizing the accusations of sexual assault made by Moore's ex-girlfriend, and other statements attributed to Selloni that Moore "physically abuses" women and that she had seen "multiple women leaving the venue [Mar-a-Lago] in tears" because of him.[4]  *Id.* at 3.  The recording of the argument between Moore and his ex-girlfriend ultimately

---

[3] Although Moore chose not to attach the Article to his Complaint, this Court may consider it on a motion to dismiss because it is central to his claims, and is deemed to be incorporated by reference.  *See, e.g.*, *Miller v. Gizmodo Media Grp., LLC*, No. 18-24227-CIV, 2019 WL 1790248, at *2 n.1 (S.D. Fla. Apr. 24, 2019).  Under similar circumstances, courts adjudicating defamation claims routinely consider the entirety of the challenged publication.  *E.g.*, *Pick v. Raffensperger*, 2025 WL 2954078, at *4 (11th Cir. Oct. 20, 2025) (court considered book that included statements challenged in defamation complaint where it was submitted by defendant with motion to dismiss); *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) (finding challenged article attached to defendant's answer was incorporated by reference, and considering it on Rule 12(c) motion); *Duffy v. Fox News Networks, LLC*, 2015 WL 2449576, at *3 (M.D. Fla. May 21, 2015) (considering video and article under "incorporation by reference" doctrine in ruling on motion to dismiss); *see also Beckman v. Regina Caeli, Inc.*, 752 F. Supp. 3d 1346, 1372 n.11 (N.D. Ga. 2024) (exhibit of allegedly defamatory statement attached to motion to dismiss was incorporated into the complaint by reference); *Knievel v. ESPN, Inc.*, 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002) (in defamation case, court considered contents of defendant's website as reflected in exhibit attached to motion to dismiss, where website contents "are at the center of Plaintiffs' allegations" and "copies of some of the pictures are attached to the complaint"), *aff'd sub nom. Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).

[4] Among other things, the court files describe Selloni's claim that during a dinner, Moore was "pinching [the alleged victim's] leg under the table to shut her up"; that the alleged victim told Selloni the next morning that Moore had sexually assaulted her in a bedroom at Mar-a-Lago; that when the alleged victim asked to get the morning-after pill, Moore "flipped out"; and that she recorded an argument between them, before jumping out of the car and being picked up by a

reached "powerful members of the Trump world, including the president's son Eric and high-ranking Secret Service officials," resulting in Moore becoming a "pariah." *Id.* at 1.

Prior to publication, ANL reached out to Moore, to give him an opportunity to respond to the allegations; the Article included his version of events, including his denial of the sexual assault claims, and his explanation that he had sued Selloni because she was allegedly engaged in a "calculated [plot] to destroy [his] reputation." *Id.* at 7.  The Article also reported Moore's assertion that the recording of his argument with his then-girlfriend was illegal; his claim that there is no record of any police report about the alleged sexual assault; and his statement that his then-girlfriend later sent him text messages apologizing. *Id.*  The Article also quoted Moore's friend who described him as a "real nice guy" whose membership should be reinstated. *Id.* at 6.

Toward the end of the lengthy Article, it reported that Moore was continuing to "try to preserve his image as a Trump insider" by, among other things, posting photographs on social media showing him with prominent MAGA figures. *Id.* at 7.  Among other examples, the Article reported that Moore posted a photograph showing him with deputy FBI director Dan Bongino, and that earlier this year, Moore posted a photo of him with Barron and Donald Trump. *Id.* at 7-8.  The Article also included a photograph of Moore with FBI Director Kash Patel, with the caption "FBI Director Kash Patel was another outspoken Trump supporter that was persuaded by Moore to pose with [him]." *Id.* at 9.  And the Article reported that Moore "posted what seems to be a fresh video of himself standing with Trump confidante Roger Stone, who was celebrating his birthday and can be seen thanking Trump for treating them to dinner that night." *Id.* at 8.  The Article described this post as "deceptive" because, according to Stone, the video had been recorded two years earlier – long before Moore was banished from Mar-a-Lago. *Id.* at 9.

### C.  The Complaint[5]

On September 17, 2025, Plaintiff filed this lawsuit, asserting claims for defamation *per se* and defamation by implication based solely on two statements in the Article:

- Statement 1: "FBI Director Kash Patel was another outspoken Trump

---

Mar-a-Lago security guard who helped her recover her belongings from the Club.  Ex. A at 3. The alleged victim sent Selloni the recording, which Selloni allegedly shared with the wider Mar-a-Lago community. *Id.* at 1, 4.

[5] Plaintiff originally named Mail Media Inc. as the defendant in this lawsuit.  ECF No. 1.  On November 7, 2025, by stipulation, Plaintiff filed an amended complaint substituting ANL for Mail Media, because ANL was the publisher of the Article.  ECF No. 18.

supporter that was persuaded by Moore to pose with."  Compl. ¶ 18.

- Statement 2: "And just last week, Moore posted what seems to be a fresh video of himself standing with Trump confidante Roger Stone, who was celebrating his birthday and can be seen thanking Trump for treating them to dinner that night. But those more recent postings were deceptive, Stone tells Daily Mail, saying the video showing him with Moore was actually shot at his 71st birthday two years ago." *Id.* ¶ 19.

Moore alleges that Statement 1 defamed him because the use of the word "persuaded" effectively accused him of being "an opportunist who fabricates relationships with public officials, thereby falsely suggesting undisclosed facts of manipulation and deceit to undermine his professional reputation." *Id.* ¶ 29.  Moore alleges that the use of the word "deceptive" in Statement 2 falsely suggests that he "was intentionally deceiving the public and … fabricate[d] associations with political figures." *Id.* ¶ 42.  For the reasons set forth below, because neither statement is actionable, Moore's entire Complaint should be dismissed with prejudice.

## ARGUMENT

Under Rule 12(b)(6), a plaintiff must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citation and quotation marks omitted).  Although "well-pleaded factual allegations" are taken as true for purposes of a Rule 12(b)(6) motion, mere legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1346 (11th Cir. 2025) (same).  Where, as here, a plaintiff has not "not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Twombly*, 550 U.S. at 570.

To plead defamation under Florida law, a plaintiff must sufficiently allege "five elements: (1) publication, (2) of a false statement, (3) with knowledge or reckless disregard as to the falsity (for public figures) or negligence (for private figures), (4) which causes actual damages, and (5) is 'defamatory.'" *Mishiyev v. Davis*, 402 So. 3d 443, 450 (Fla. Dist. Ct. App.

2025).  Because Plaintiff cannot plead the necessary elements of his defamation claims as a matter of law, his entire Complaint should be dismissed with prejudice.[6]

Courts in this Circuit favor early dismissal of meritless defamation claims because "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *see also Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020) (noting policy preference for early dismissal of defamation claims).[7]

## I.   STATEMENT 1 IS NOT ACTIONABLE AS A MATTER OF LAW

Moore's attempt to concoct a defamation claim from the use of the word "persuaded" in the caption of a photograph in the Article showing him posing with FBI Director Kash Patel is entirely baseless.  It is not remotely pejorative – let alone actionably defamatory – to say that a person "persuaded" another person to pose for a photograph at a political or fundraising event.  Moreover, the photograph itself shows Patel posing with Moore, so plainly he was "persuaded" to do so.  For these independent reasons, his defamation claims based on Statement 1 fail.

### A.   Statement 1 Is Not Defamatory

To state a defamation claim, it is not sufficient for a plaintiff to allege a false statement of fact; the statement also must be defamatory.  *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (applying Florida law).  "Words are defamatory when they charge a person with an

---

[6] Where, as here, challenged statements are not actionable as a matter of law, no amendment can cure that deficiency, and the court should dismiss the claim with prejudice.  *Sloan v. Shatner*, No: 8:17-cv-332, 2018 WL 3769968, at *6-7 (M.D. Fla. June 22, 2018) (defamation claim was dismissed with prejudice where statements "could not have been demonstrably false"); *see also Button v. McCawley*, No. 0:24-CV-60911, 2025 WL 1517348, at *6 (S.D. Fla. May 28, 2025) (denying motion for leave to amend where statements were "pure opinion and therefore cannot support a defamation claim"), *appeal filed*, No. 25-12168 (11th Cir. June 24, 2024).

[7] Courts across the nation similarly have recognized the importance of speedy resolution of cases involving free speech.  *See, e.g.*, *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.) ("[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits."); *Ireland v. Edwards*, 584 N.W.2d 632, 636 n.4 (Mich. Ct. App. 1998) (summary relief "is particularly appropriate at an early stage in cases where claims of libel … are made against publications dealing with matters of public interest and concern"); *Moffatt v. Brown*, 751 P.2d 939, 946 (Alaska 1988) (recognizing danger that publishers will "become self-censors" out of fear "of being put to the defense of a lawsuit" regardless of "the outcome of the lawsuit itself" (quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966))).

infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace, or tend to injure one in one's business or profession." *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (citing *Adams v. News-J. Corp.*, 84 So. 549, 551 (Fla. 1955)). "To injure one in his trade or profession, the statement must … strike at 'professional competence and fitness to engage in a given profession.'" *San Juan Prods., Inc. v. River Pools & Spas, Inc.*, No. 8:21-cv-2469, 2023 WL 1994087, at *8 (M.D. Fla. Feb. 14, 2023) (quoting *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1346 (M.D. Fla. 2003)).[8]

"Whether a statement is susceptible to defamatory interpretation is a question of law left to the Court." *Carfagna v. Fisher Island Club, Inc.*, No. 24-CV-22350-RAR, 2025 WL 2306196, at *7 (S.D. Fla. Aug. 11, 2025) (quoting *Bongino*, 477, F. Supp. 3d at 1317). "This inquiry turns on the 'gist' of the alleged defamatory statement and the context in which that statement was made," including "all the words used" in the Article. *Bongino*, 477 F. Supp. 3d at 1317 (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (Fla. 2008), and *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983)). Each allegedly defamatory statement "should be construed as the common mind would understand it, and not in [its] mildest or most grievous sense." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (internal quotation marks omitted) (citation omitted). Ultimately, courts "may properly dismiss an action pursuant to Rule 12(b)(6) where the statement could not possibly have a defamatory or harmful effect." *Mac Isaac*, 557 F. Supp. 3d at 1257 n.5 (internal quotation marks omitted).[9]

---

[8] Florida recognizes two different categories of defamation. Defamation *per se*, which Moore's First Cause of Action alleges, involves a statement that (1) the plaintiff committed an "infamous crime," (2) the plaintiff "contracted an infectious disease," (3) the plaintiff did something that "tend[s] to subject a person to hatred, distrust, ridicule, contempt or disgrace," or (4) would tend to "injure a person in his trade or profession." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258-59 (S.D. Fla. 2021) (quoting *Adams*, 84 So. 2d at 551). By contrast, defamation *per quod* requires extrinsic facts to comprehend the defamatory meaning, and requires pleading of special damages. Moore does not allege defamation *per quod*, nor could he, because his Complaint does not allege extrinsic facts or special damages. *See* Compl. ¶ 74; *Block v. Matesic*, 789 F. Supp. 3d 1131, 1155 (S.D. Fla. 2025) ("Because defamation *per quod* requires additional explanation of the words used to show that they have a defamatory meaning, the plaintiff must allege and prove special damages." (citation modified) (quoting *Hoch v. Rissman, Weisburg, Barrett*, 742 So. 2d 451, 457 (Fla. 5th DCA 1999))), *appeal filed*, Nos. 25-12573, 25-12540 (11th Cir. July 28, 2025).

[9] Courts routinely dismiss defamation claims at the pleading stage when the statements at issue are not defamatory. *See, e.g.*, *Bell v. Pollock*, 2025 WL 1148677, at *9 (M.D. Fla. Apr. 17, 2025) (dismissing statements after finding that they were not defamatory because court determined they were not damaging to plaintiff's reputation); *Jacob v. Lorenz*, 626 F. Supp. 3d

Here, there is nothing remotely defamatory about the use of the word "persuaded" in referencing Moore's posing for photos with Patel and others.  Even a dictionary definition makes clear that the word can mean nothing more than that a request was made and accepted.  *See Persuade*, Britannica Dictionary, https://www.britannica.com/dictionary/persuade (last visited Nov. 13, 2025) ("persuade" is to "cause (someone) to do something by asking").  There is nothing pejorative about the word as it is commonly used, nor is there anything negative about it as used in the context it appears in the Article.  Instead, Moore attempts to manufacture a defamatory meaning by asserting that that the use of this word somehow suggests that he is "an opportunist who *fabricates relationships* with public officials, thereby falsely suggesting *undisclosed facts of manipulation and deceit* to undermine his professional reputation."  Compl. ¶ 29 (emphasis added).  The Article says nothing of the kind, nor can this meaning be reasonably inferred.[10]  Instead, in context, Statement 1 means nothing more than that Moore sought to pose for photographs with Patel and other prominent Trump supporters – which he does not dispute.

But even if the innocuous use of the word "persuade" could be read to suggest that Moore "influence[d]" someone to gain a benefit, courts have held that similar descriptions are not defamatory as a matter of law (including in contexts that are far more negative than the one at issue here).  *See, e.g.*, *T.S. Haulers, Inc. v. Kaplan*, 744 N.Y.S.2d 193, 196 (N.Y. App. Div. 2002) ("It has been repeatedly held that a claim that a plaintiff took advantage of political connections or influence to gain some governmental benefit or advantage, in the absence of an assertion of criminality, is not defamatory."); *Di Bernardo v. Tonawanda Publ'g Corp.*, 499 N.Y.S.2d 553, 554 (N.Y. App. Div. 1986) (same); *Branch v. Publishers: George Knapp & Co.*, 121 S.W. 93, 100 (Mo. 1909) (article reporting that general assembly member was induced to

---

672, 690 (S.D.N.Y. 2022) (dismissing statements for lack of defamatory meaning, rejecting plaintiff's argument that statement "implies that [plaintiff] lied about" a certain fact because it "means exactly what it says"); *Purcell v. Ewing*, 560 F. Supp. 2d 337, 342 n.5 (M.D. Pa. 2008) (finding that statement lacked defamatory meaning because "[n]o reasonable person who read the posting would believe that Purcell had actually committed a criminal act").

[10] Plaintiff misapprehends what "defamation *per se*" means.  It requires a meaning that is apparent on its face, rather than something that may be implied.  Plaintiff does not explain how the statement is defamatory on its face; instead, this part of his "defamation *per se*" claim essentially duplicates his second claim for alleged "defamation by implication."  *See Mid-Florida Television Corp. v. Boyles*, 467 So. 2d 282, 282 (Fla. 1985) (holding that defamation *per se* denotes a statement that is "facially defamatory, and therefore actionable without resort to innuendo").

support a U.S. Senate candidate due to his "hospitable attentions" was not defamatory).  Here, there is no suggestion of corruption or illegality; the word "persuaded" conveys nothing more than that Patel posed with Moore at Moore's request.  Nothing about this is defamatory.

Moore also cannot make Statement 1 defamatory by asserting that it somehow suggests that Patel and others were reluctant to pose with him and had to be cajoled or tricked.  A recent decision from this District is instructive on this point.  In *Bongino v. Daily Beast*, *supra*, a former political commentator (now the deputy FBI director) sued for defamation based on a news report that a media company had "dropped … [him] from its lineup of conservative commentators." 477 F. Supp. 3d at 1317.  The district court held that the term "dropped" was not defamatory because it was clear from the article that his "departure stemmed from corporate downsizing"; the court rejected the plaintiff's assertion that the word "'dropped' expresses that NRATV fired him" for cause.  *Id.* at 1319.  Similarly, the Article here does not support Moore's strained reading of the word "persuaded" as somehow suggesting that Moore was "an opportunist who fabricates relationships with public officials."  Instead, in context, the description of Moore's posing with Patel and others showed that Moore was able to cultivate a "social media [feed that] presented him with a who's who in the MAGA world" – which is not defamatory  Ex. A at 9.

The absence of defamatory meaning is further confirmed by the fact that, according to Moore's own allegations, his job as a fundraiser required him to post photographs with prominent MAGA figures to "stay relevant."  Compl. ¶ 33; *see also id.* ¶ 35.  With respect to Patel specifically, the Complaint alleges that Patel willingly posed for the photograph because Moore and Patel had a "legitimate and ongoing relationship" based on Moore's fundraising and video work for Patel.  *See id.* ¶¶ 30, 56-57.  This admission that Patel agreed to take a photograph with Moore because Moore had provided him with useful services is entirely consistent with the Article's use of the word "persuaded."  Moore's attempt to effectively rewrite the Article to concoct a defamatory meaning from the caption should be rejected.

**B.    Statement 1 Is Substantially True**

Independently, Statement 1 cannot support a defamation claim because Moore cannot meet his burden of demonstrating that it is materially false to say that he "persuaded" Patel to pose for a photograph with him.  *See Levan v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230, 1240 n.28 (11th Cir. 1999) ("In a public figure libel action, the burden of proving that a statement is false lies with the plaintiff.").

It is axiomatic that a defamation claim can arise only from statements that are false.  *See, e.g.*, *Byrd*, 433 So. 2d at 595 ("A false statement of fact is the *sine qua non* for recovery in a defamation action.").  In evaluating this requirement, courts apply the doctrine of "substantial truth," which rejects nit-picky claims like Moore's Complaint about the choice of words here. Instead, "[u]nder the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (quoting *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999)).  A statement is "substantially true" if "it would have no different effect on the mind of a reader than the literal truth." *Trump Media & Tech. Grp. Corp. v. WP Co.*, 2024 WL 5202865, at *7 (M.D. Fla. Dec. 23, 2024).  Courts routinely dismiss defamation claims at the pleadings stage on substantial truth grounds.[11]

Here, Moore cannot meet his burden of plausibly pleading material falsity.  The "gist" of Statement 1 – *i.e.*, that Moore was able to get a photograph with Patel – is amply proven by the photograph itself, which shows them posing together.  *See, e.g.*, *Shipkovitz v. Wash. Post Co.*, 571 F. Supp. 2d 178, 183-84 (D.D.C. 2008) (investigators' photographs of plaintiff's home established that statements regarding the condition of his home were substantially true), *aff'd*, 408 F. App'x 376 (D.C. Cir. 2010); *Fowler v. Cap. Cities/ABC, Inc.*, 2002 WL 31230802, at *7 (N.D. Tex. Sept. 30, 2002) (court found that statement that physician was not forthcoming about the seriousness of patient's infection was substantially true, based on images showing extent of infection).  The substantial accuracy of the word "persuaded" also is confirmed by the

---

[11] *See, e.g.*, *id.* at *6-7 (article's statements that plaintiff did not disclose to SEC receiving a finder's fee for loan deal, where plaintiff did not deny agreement to pay fee to brokerage directed by president of potential acquiring company; "gist" of statement about conflict of interest was the same); *Marder v. TEGNA Inc.*, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (statement that government filed a criminal complaint against plaintiff was substantially true because plaintiff already had committed the crimes for which he was later charged and convicted, even though the complaint had not yet been filed); *Jeter v. McKeithen*, 2014 WL 4996247, at *3 (N.D. Fla. Oct. 7, 2014) (statement charging plaintiff with humiliating and defaming "dozens of Bay County teens" was substantially true where "regardless of whether K.J. was alleged by the police to have bullied 'dozens' of victims or 'at least one' victim, the statement communicates the same 'gist' to the audience"); *see also Moore v. Lowe*, 591 F. Supp. 3d 1087, 1109-10 (N.D. Ala. 2022) ("statement that Moore was 'an alleged sexual predator' and that Moore had been 'accused of sexual misconduct by multiple women who were just teenagers at the time' are true or substantially true statements" where two alleged victims were younger than 18), *appeal dismissed*, 2024 WL 227897 (11th Cir. Jan. 22, 2024).

Complaint, which acknowledges that Patel willingly posed for the photo because Moore previously provided useful services to him.  *See* Compl. ¶ 57.  In the absence of any plausible allegation of falsity, the defamation claim based on Statement 1 must be dismissed.

## II.     STATEMENT 2 IS NOT ACTIONABLE AS A MATTER OF LAW

Moore's claims based on Statement 2 are similarly without merit, for two independent reasons: (1) the Article's use of the word "deceptive" is constitutionally protected as a subjective conclusion, based on undisputed, disclosed facts; (2) use of the word "deceptive" to describe a recent post of an old video, without disclosing a material change in circumstances, is substantially accurate.  Moore admits that he attempted to "remain visible and relevant" by posting a two-year old video that appears to describe a recent dinner with President Trump, without disclosing that it was taken long before his membership to Mar-a-Lago was revoked. Describing such a post as "deceptive" is entirely fair.

### A.     Statement 2 Is a Constitutionally-Protected Subjective Description Based on Disclosed Facts

Because defamation claims only arise from "false" statements, it is well established that "statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions."  *Turner*, 879 F.3d at 1262; *see also Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 717 (11th Cir. 1985) ("[o]pinions are protected from defamation actions by the first amendment").  "Whether the statement is one of fact or opinion … [is a] question[] of law for the court," and courts routinely grant motions to dismiss defamation claims at the pleading stage when the claim arises from subjective statements.  *Turner*, 879 F.3d at 1263-64; *see also Vibe Ener v. Duckenfield*, 2020 WL 6373419, at *8 (S.D. Fla. Sept. 29, 2020) (statement calling plaintiff's lawsuit "a brazen attempt to use the media as a platform to spread falsehoods and inflict pain on [opposing party] and his family for financial gain" was "pure opinion with respect to [defendant's] subjective assessment of the merits of Plaintiff's lawsuit"; "[t]he underlying facts of that lawsuit were set forth in the … article" and the statement "was thus an opinion as to the facts available to the reader").[12]

---

[12] *See also, e.g.*, *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 175 (S.D.N.Y. 2023) (statements by newspaper defendant describing "theory based on disclosed facts for what may have caused the substantial decline in the value of the ICP token" were not actionable), *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024); *Advisors Excel, L.L.C. v. Scranton*, 2014 WL

Under Florida law, "a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Turner*, 879 F.3d at 1262 (citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981)). Such statements are not actionable when "[t]he facts upon which the opinion is based" are stated or disclosed to the reader. *Scott v. Busch*, 907 So. 2d 662, 668 (Fla. 5th DCA 2005); *see also Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006) (affirming conclusion that editorials were not actionable because they were based on facts disclosed in the articles at issue and other contemporaneous coverage); *Zorc v. Jordan*, 765 So. 2d 768, 772 (Fla. 4th DCA 2000) (statements based on disclosed, true facts were nonactionable opinions).

Statement 2's use of the word "deceptive" to describe Moore's admitted posting of a two-year-old video, without disclosing the lengthy time period that had lapsed (or the change in his circumstances *vis a vis* Mar-a-Lago), plainly falls within the constitutional protections for subjective conclusions based on disclosed facts. The undisputed facts described in the Article are as follows: (1) one week before the Article was published, Moore indisputably had posted on social media "what seems to be a fresh video of himself standing with Trump confidante Roger Stone"; (2) in the video, Stone is shown "celebrating his birthday and can be seen thanking Trump for dinner that night"; (3) the video actually was recorded *two years earlier*; and (4) Moore's post does not disclose that the video is two years old, or that it was recorded long before he was banned from Mar-a-Lago. Ex. A at 8-9; *see also* Compl. ¶ 35.

Given this factual background, none of which is disputed, the Article's description of the posting as "deceptive" is a subjective conclusion based on disclosed, undisputed facts. In similar circumstances, courts have recognized that use of the word "deceptive" or similar terms are inherently subjective, and therefore constitutionally protected. *See, e.g.*, *Pick*, 2025 WL 2954078, at *8-9 (statement that plaintiff had "deceptively sliced and edited [a video] so that it appeared to show the exact opposite of reality" was defendant's "subjective interpretation" of the

---

12543802, at *7 (S.D. Fla. Sept. 15, 2014) (subjective statements by defendant company about competitor were protected).

fact that "only select portions of the video" were shown).[13]  Because Statement 2 is not actionable, Moore's attempted defamation claim based on this statement should be rejected.

> **B.     Moore Cannot Prove Statement 2 Is Materially False**

As discussed above, it is Moore's burden to demonstrate that Statement 2 is materially false.  *Levan*, 190 F.3d at 1240 n.28.  Even assuming, for sake of argument, that the use of the word "deceptive" in Statement 2 could be interpreted as asserting a statement of fact, Moore cannot possibly shoulder his burden of demonstrating that it is false because the Complaint *concedes* all the facts necessary to establish that his social media post was "deceptive."

Moore does not dispute that, shortly before the Article was published, he posted the video of him with Roger Stone.  *See* Compl. ¶ 35.  It is undisputed that, in the video, Stone states that they had just come from dinner with President Trump.  *See id.* ¶ 19.  Moore concedes that the video was actually taken two years earlier, which he did not disclose in his post.  *Id.* ¶ 35.  Moore also concedes that, at the time he posted the video on social media, his membership at Mar-a-Lago had been revoked, which his post also did not disclose.  Instead, he admits that he "posted older photographs and videos in order to remain visible and relevant" – effectively admitting that he was using old content to attempt to maintain the public perception that he still had close ties with powerful Republicans, and was in personal contact with President Trump.  *Id.*

Based on these undisputed facts, the Article's use of the word "deceptive" in describing Moore's social media post cannot be demonstrated to be materially false and it is thus not actionable.  *See, e.g.*, *Pick*, 2025 WL 2954078, at *8 (statement about plaintiff's "deceptive intentions" were based on "substantially true" fact that only parts of the video were shown).

> **III.    THE INCREMENTAL HARM DOCTRINE PRECLUDES MOORE'S DEFAMATION CLAIMS.**

In addition to the grounds set forth above, which are sufficient to warrant dismissal of

---

[13] *See also Turner*, 879 F.3d at 1266 ("we hold that the Defendants' conclusion of 'inappropriate' and 'poor judgment' are pure opinion and nonactionable"); *Fid. Warranty Servs., Inc. v. Firstate Ins. Holdings*, 74 So. 3d 506, 516 (Fla. 4th DCA 2011) (claim that insurance company was charging "fraudulent rates" was pure opinion where underlying facts were explained to the listener); *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1113 (N.D. Ill. 2016) (description of report classification as "misleading," which was "immediately followed by the factual basis for that assertion," was a nonactionable opinion); *Beattie v. Fleet Nat'l Bank*, 746 A.2d 717, 727 (R.I. 2000) (statement in letter that data used in appraisal "present[ed] such a misleading indication of the value of this property as to be considered fraudulent" was a nonactionable statement where facts and premises underlying the opinion were fully disclosed).

this lawsuit without more, this action should be dismissed for the independent reason that Moore cannot show that the statements at issue caused him measurable harm, beyond any reputational damage that would have been caused by the portions of the Article he did not challenge (and the underlying events about which it reports).

The incremental harm doctrine "'measures the incremental reputational harm inflicted by the challenged statements beyond the harm imposed by the nonactionable remainder of the [same] publication' – *i.e.*, whether nondefamatory statements within the same at-issue publication inflicted the same reputational harm as the allegedly defamatory statements." *Project Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1275 n.12 (11th Cir. 2024) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 522 (1991)).  This has been described as a "branch of the libel-proof plaintiff doctrine," *Herbert v. Lando*, 781 F.2d 298, 310 (2d Cir. 1986), which "prohibits a plaintiff from recovering for libelous statements where the plaintiff's reputation in the community was so tarnished before the publication that no further harm could have occurred," *Davis v. McKenzie*, 2017 WL 8809359, at *14 (S.D. Fla. Nov. 3, 2017) (quoting *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1079 (3d Cir. 1988)), *report and recommendation adopted*, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018).  The incremental harm doctrine similarly bars plaintiffs from pursuing defamation claims based on statements that essentially pale in comparison to the portions of the publication at issue that are unchallenged (using those unchallenged items as the basis for comparison, rather than assessing plaintiff's reputation more generally).

Courts in this District have recognized the libel-proof plaintiff doctrine as grounds for dismissal of a defamation claim.  For example, in a case involving a convicted sex trafficker who alleged that his reputation was harmed by the defendant's statements in a PBS interview that he physically and sexually abused her, the court reasoned that plaintiff's

> documented history of violence and of physical and sexual abuse, coupled with the widespread media accounts of his alleged abuse of several adult and minor females, have so thoroughly damaged his reputation that as a matter of law he cannot recover more than nominal damages as a result of the PBS broadcast.

*Davis*, 2017 WL 8809359, at *16-17.  Although the district court acknowledged that the Florida Supreme Court had not yet considered whether to adopt the libel-proof plaintiff doctrine, the district court found that it would do so "on the present facts" "given Florida's declared policy of sparing individuals and entities the burden and expense of defending against meritless

defamation claims (particularly on matters of public concern)" and "the focus of Florida defamation law on reputational interests." *Id.* The same principle justifies dismissal where, as here, the statements at issue could not reasonably be claimed to cause reputational harm beyond the reputational damage that would be caused by *unchallenged* portions of the article.[14]

Here, Plaintiff's defamation claims should be dismissed under the incremental harm doctrine. Just as the plaintiff in *Davis* could not sustain a defamation claim because his reputation was already "thoroughly damaged," the two statements Moore challenges in this lawsuit could not conceivably cause reputational beyond whatever damage would arise from the unchallenged reports about Moore's involvement in a sexual assault scandal, and his other transgressions, which led to him being ejected from Mar-a-Lago. Compared to this backdrop of damning and undisputed facts, the Article's innocuous reporting about Moore's "persuading" Patel to pose with him and posting a "deceptive" video of Stone could not credibly be claimed to cause meaningful harm to Moore's reputation, which requires dismissal.

## IV.  PLAINTIFF'S CLAIMS FAIL BECAUSE HE FAILED TO PLEAD FACTS ESTABLISHING CONSTITUTIONAL ACTUAL MALICE

In addition to the inherent defects in his defamation claims described above, Moore's lawsuit should be dismissed because the Complaint has not sufficiently pled actual malice. "[T]he First Amendment requires the public figure plaintiff to demonstrate by clear and convincing evidence that the alleged defamatory statement was made with actual malice – that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024) (internal quotation marks omitted); *accord Dershowitz v. Cable News Network, Inc.*, 153 F.4th 1189, 1193 (11th Cir. 2025) ("Public

---

[14] Although ANL has not found a reported decision applying the incremental harm doctrine in Florida, the defense is well established in other jurisdictions, and is a logical application of the libel-proof plaintiff principles recognized in *Davis*. *See, e.g.*, *Pearlman v. NYP Holdings*, 2015 WL 2232335, at *3 (N.Y. Sup. Ct. May 11, 2015) (granting motion to dismiss where allegedly defamatory statements "cannot conceivably cause any meaningful harm beyond the admitted truth that she is guilty of committing a serious felony"); *Jones v. Globe Int'l, Inc.*, 1995 WL 819177, at *10-11 (D. Conn. Sept. 26, 1995) (challenged statements about criminal activity and a "bizarre love obsession" with women's shoes was not actionable because they did "not add materially to the injury caused by the truths in the articles, to wit, Jones' conviction for burglary and possession of … stolen property"); *Galu v. SwissAir: Swiss Air Transp. Co.*, 1987 WL 15580, at *5 (S.D.N.Y. Aug. 3, 1987) (false statement that plaintiff was "prisoner" dismissed on incremental harm grounds where statement accurately described him as a "criminal").

figures … cannot recover damages for defamation unless they prove that an untrue statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964))).  "Florida has since implemented that same standard as a matter of state law." *Dershowitz*, 153 F.4th at 1193 (citing *Jews For Jesus, Inc.*, 997 So. 2d at 1108).

"Determining whether an individual is a public figure – and thus subject to the actual malice analysis – is a question of law for the court to decide." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (citing *Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1247 (5th Cir. 1980)).  A limited purpose public figure is one who has "thrust himself into a particular public controversy." *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020).

Moore's Complaint does not allege that he is a private figure; instead, the Complaint only alleges the standard of fault applicable to public figures: actual malice.  *See* Compl. ¶ 45; *Shapley v. Lowell*, 2025 WL 2935970, at *5 n.3 (D.D.C. Oct. 16, 2025) ("Plaintiffs appear to concede that they are limited public figures, as they allege that they satisfy the 'actual malice' standard in the Complaint.").[15]  Nor would such a claim be consistent with his public persona, as a well-connected Republican fundraiser connected to President Trump and members of his inner circle. The Complaint alleges that Moore runs a nonprofit organization that raises funds for political candidates and causes, and describes him as maintaining relationships with "donors, community leaders, and public officials," Compl. ¶¶ 9-10, all of which reflects Moore's "pervasive involvement in the affairs of society," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974); *see also Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) ("Those who have voluntarily sought and attained influence or prominence in matters of social concern are generally considered public figures.").  Moore's Complaint also equates him with "[p]oliticians, influencers, celebrities and public figures" who also "routinely post photos from previous events to remind the public of their … stature … an[d] signal continued relevance." Compl. ¶ 38.  Moore was at the center of a sexual assault "scandal" at Mar-a-Lago, and alleges that he sued another club member for defamation to "clear[ his] name."  *See id.* ¶ 12; Ex. A at 7.

---

[15] Unlike public figures, private figures "need only allege negligence on behalf of the publisher in order to maintain a defamation action."  *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002).  Even assuming Moore was a private figure, his Complaint would still fail because he failed to plausibly allege negligence.

At minimum, therefore, Moore is a limited-purpose public figure with respect to the matters discussed in the Article, for "forc[ing] himself into the *public debate* over his supposed involvement" in that controversy and "inviting further public attention in an effort to influence the debate." *Berisha*, 973 F.3d at 1311.

As a public figure, Moore was required to plead facts sufficient to support a finding of actual malice. This requirement "is not an objective one and the beliefs or actions of a reasonable person are irrelevant." *Michel*, 816 F.3d at 702-03 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Instead, the law asks whether the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.* at 703 (collecting cases). At the motion to dismiss stage, a public figure plaintiff must "plead facts sufficient to show that [the defendant] published with sufficient doubts as to the truth of its publication." *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1235 (Fla. 3d DCA 2021). Moore failed to meet this burden.

The only *factual* allegation relating to actual malice is Moore's assertion that ANL did not retract the allegedly false statements (Compl. ¶ 73), but the law is clear that "[a] publisher's refusal to retract a statement … does not qualify as actual malice." *Reed v. Chamblee*, 2023 WL 6292578, at *24 (M.D. Fla. Sept. 27, 2023), *aff'd*, 2025 WL 1874638 (11th Cir. July 8, 2025). The only other references to actual malice in the Complaint are terse, conclusory statements. *See* Compl. ¶¶ 45, 72, 93 (alleging, without more, that Defendant acted with "actual malice" or at least "reckless disregard for the truth"). This is insufficient to meet his burden of pleading *facts* that would be sufficient, if proven, to demonstrate by clear and convincing evidence that the two Statements at issue were published with actual malice. *See Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1312 (M.D. Fla. 2021) (dismissing defamation claim where plaintiff made mere conclusory allegation of actual malice rather than alleging "sufficient facts showing that Defendants 'entertained serious doubts' as to the truth of the articles"), *aff'd*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021). Indeed, the absence of actual malice is underscored by the undisputed fact that Moore was contacted for comment prior to publication, and his side of the story was prominently featured in the Article. *See* Ex. A at 3, 6-7, 9. Because Moore has failed to meet his burden of pleading actual malice, his lawsuit must be dismissed for this additional reason.

## V.        PLAINTIFF FAILED TO PLEAD DEFAMATION BY IMPLICATION.

As an alternative to defamation *per se*, Plaintiff alleges that Statements 1 and 2 were also defamatory by implication.  But this claim fails as well, for all the reasons his defamation *per se* claim fails.  In addition, Plaintiff has failed to allege that the statements at issue are true, which is a pre-requisite of a defamation by implication claim.

"Whether the defendant's statements constitute defamation by implication is a question of law for the court to determine." *Turner*, 879 F.3d at 1269 (citing *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 590 (Fla. Dist. Ct. App. 1983)).  Under Florida law, "defamation by implication applies in circumstances where *literally true* statements are conveyed in such a way as to create a false impression." *Jews For Jesus*, 997 So. 2d at 1108 (emphasis added).  This cause of action is distinguished from both defamation *per se*, in which a publication is false and defamatory on its face, and defamation *per quod*, where the statement is literally defamatory but requires additional explanation for the publication's defamatory meaning to become clear.  *See Block*, 789 F. Supp. 3d at 1155 (explaining difference between defamation *per se*, defamation *per quod*, and defamation by implication).  Defamation by implication, by contrast, is "premised not on direct statements but on false suggestions, impressions and implications arising from otherwise *truthful* statements." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2024) (emphasis added) (quoting *Jews for Jesus*, 997 So. 2d at 1107).  Dismissal of defamation by implication claims is "require[d]" when the plaintiff alleges that the statements at issue "were false – not that they were true and gave a false implication." *Id*; *see also Markle v. Markle*, 2024 WL 1075339, at *24 (M.D. Fla. Mar. 12, 2024) (finding that plaintiff failed to state a claim for defamation-by-implication because she "fail[ed] to identify the literally true facts that would serve as the basis for such a claim," instead alleging that all the challenged statements were false), *appeal filed*, No. 24-11091 (11th Cir. Apr. 9, 2024).  Here, rather than identifying "true" statements that he claims implied something "false" about him, Plaintiff's Complaint alleges that the two statements at issue are literally "false."  Compl. ¶ 76.  That defeats his attempt to claim defamation by implication, as a matter of law.

Plaintiff's defamation by implication claim also fails for all the same reasons that require dismissal of his defamation *per se* claims.  Just as with defamation *per se*, the defamation by implication "inquiry turns on whether the 'gist' of the publication is false" and "[w]hether the publication is defamatory becomes an issue for the jury only where the publication is susceptible

of two reasonable interpretations, one of which is defamatory." *Turner*, 879 F.3d at 1269.  Here, Statement 1 – which merely states that Plaintiff "persuaded" Patel and others to pose for a photograph – is not actionable because it cannot reasonably be interpreted to suggest that Plaintiff "fabricates relationships with public officials" or engages in "manipulation and deceit." *Contra* Compl. ¶ 28.  *See Turner*, 879 F.3d at 1270 (affirming dismissal where "no reasonable person's perception of the entire[ publication]" would give rise to allegedly defamatory implication (citation modified)).  In addition, even assuming that the gist of Statement 1 could be understood to imply that Plaintiff opportunistically posted photographs of himself with prominent Republican figures, that implication would be substantially true given his admission that he "occasionally posted older photographs and videos in order to remain visible and relevant." Compl. ¶ 35.

With respect to Statement 2, Plaintiff's claim fails because, "even if the statements are defamatory by implication, a defendant is still protected from suit if his statements qualify as opinion." *Turner* 879 F.3d at 1269 (affirming dismissal of defamation by implication claims based on "nonactionable opinion").  Whether the allegedly defamatory sting was express or implied, the Article's characterization of Plaintiff's posting of an old video with Roger Stone as "deceptive" was an opinion and is non-actionable for all the reasons set forth above.  *See* Section II.A, *supra*.  Moreover, even assuming Statement 2 carries a factual implication about Plaintiff's practice of posting old videos to stay relevant, that implication would be true.  *See* Section II.B, *supra*.  Plaintiff also failed to allege facts that would support a finding that the alleged "implications" were published with actual malice – which is another prerequisite of his defamation by implication claim.  *See Block*, 789 F. Supp. 3d at 1160 (plaintiff asserting defamation-by-implication claim must demonstrate actual malice); *see also* Section IV, *supra*.  Thus, Plaintiff's claim for defamation by implication fails for these additional reasons.

## CONCLUSION

Because Plaintiff has failed to plead a cause of action for defamation *per se* or defamation by implication, for all the reasons set forth in this Motion, the Court should dismiss Plaintiff's Complaint with prejudice.

Dated:  November 17, 2025

Toth Funes PA

s/*Brian W. Toth*
Brian W. Toth
  Florida Bar No. 57708
Freddy Funes
  Florida Bar No. 87932
Ingraham Building
25 Southeast Second Avenue, Suite 805
Miami, Florida 33131
(305) 717-7850
btoth@tothfunes.com
ffunes@tothfunes.com
e-filings@tothfunes.com

Respectfully submitted,

Davis Wright Tremaine LLP

s/ *Kelli L. Sager*
Kelli L. Sager (*pro hac vice*)
865 S Figueroa St Suite 2400
Los Angeles, CA 90017
(213) 633-6800
kellisager@dwt.com

John M. Browning (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor,
New York, NY 10020
(212) 489-8230
jackbrowning@dwt.com

Marietta Catsambas (*pro hac vice*)
1301 K St. NW, Suite 500E
Washington, DC 20005
(202) 973-4200
mariettacatsambas@dwt.com

*Counsel for Defendant Associated Newspapers Ltd.*